UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

APPLE & EVE, LLC,

    Plaintiff,

-against-

YANTAI NORTH ANDRE JUICE CO., LTD.,

    Defendant.

---

07 CV 745 (JFB)

Judge Joseph F. Bianco

**SECOND AFFIDAVIT OF PETER GUIRGUIS IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION**

STATE OF NEW YORK  )
          ) ss:.
COUNTY OF NEW YORK  )

PETER GUIRGUIS, ESQ., being duly sworn, deposes and says:

1. I submit this affidavit in support of Yantai North Andre Juice Co., Ltd.'s ("Yantai") Motion to Compel Arbitration. I am over the age of majority and competent in all respects to provide the testimony set forth herein. I am familiar with the matters described herein and if called to testify would testify as follows:

2. I am an associate at the law firm of Akin Gump Strauss Hauer & Feld, LLP, 590 Madison Avenue, New York, NY 10022, counsel to Yantai in the above-captioned matter. I am a member in good standing of the bar of the State of New York and am admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

3. On February 26, 2007, I filed an affidavit in Support of Defendant's Motion To Compel Arbitration. That affidavit attached as "Exhibit A" a copy of what I believed to be a true and correct copy of Plaintiff's Complaint, which was originally filed in the Supreme Court of

New York, Nassau County on or about December 5, 2006. As a result of a miscommunication among Yantai's counsel, I mistakenly believed that the Complaint had attached certain documents. "Exhibit A" of my first affidavit in support of Yantai's Motion to Compel Arbitration erroneously includes copies of these documents at the end of Plaintiff's Complaint.

4. Plaintiff's Complaint, excluding the documents that were not filed therewith, is attached hereto as Exhibit 1.

Dated: New York, New York
April 30, 2007

_____
Peter Guirguis

Sworn to before me this
30th day of April, 2007

_____
Notary Public

JORGE A. GUZMAN
Notary Public, State of New York
No. 01GU6145376
Qualified in New York County
Commission Expires May 8, 20 __

2

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
----------------------------------------------------------X

APPLE & EVE, LLC,

        Plaintiff,

        - against -

YANTAI NORTH ANDRE JUICE CO., LTD.

        Defendant.

----------------------------------------------------------X

Index No.: 06-020342

**COMPLAINT**

DEC -5 2006

        Plaintiff APPLE & EVE, LLC ("Apple & Eve"), by its attorneys, Moses & Singer LLP, for its Complaint against defendant, YANTAI NORTH ANDRE JUICE CO., LTD. ("Defendant" or "Yantai"), alleges as follows:

        1.     Apple & Eve is a Delaware limited liability company with a principal place of business located at 2 Seaview Boulevard, Port Washington, New York 11050, in the County of Nassau, New York. Apple & Eve is in the business of producing and distributing juice beverages. Apple & Eve purchases apple juice concentrate from Defendant.

        2.     Upon information and belief, Yantai is a corporation publicly traded on the Hong Kong stock exchange and organized under the laws of China, having a principal place of business located at 18 Andre St., Muping Economic & Technical Development Zone, Yantai, Shandong, China 264100.

        3.     Upon information and belief, Yantai is among the largest apple juice concentrate producers in China, with approximately fifteen percent (15%) share in China's total exports and six percent (6%) of the global market.

4. Upon information and belief, Yantai ships thousands of gallons of apple juice concentrate and other juice products into the United States, and regularly does or solicits business and derives substantial revenue from goods used or consumed in New York.

5. Yantai transacts business throughout the United States, including in New York, both directly and through its agents and/or employees located in the United States, including, without limitation, Yantai North Andre Juice, Inc. ("Yantai California"), a California corporation and wholly-owned subsidiary of Yantai, with a principal place of business at 322 W. 3rd St., Santa Ana, California 92701, and Mitsui Foods Inc., with a place of business at 35 Maple Street, Norwood, New Jersey.

6. Yantai contracted with Apple & Eve to supply apple juice concentrate to Apple & Eve. The apple juice concentrate supplied by Yantai to Apple & Eve is reconstituted and bottled in the United States, including the State of New York.

7. The terms and conditions of the contracts at issue in this action were negotiated in New York by and between Apple & Eve and representatives from Yantai and Yantai California. The contracts were executed by Apple & Eve in New York.

8. Venue is proper in this Court pursuant to CPLR §§ 503(a) and (c), and 509.

9. This Court has personal jurisdiction over Defendant pursuant to CPLR §§301, and 302(a)(1).

## FACTUAL ALLEGATIONS

10. On or about June 16, 2004, Apple & Eve entered into contracts with Yantai for the purchase of medium and low acidity pure apple juice concentrate (AJC) for the years 2004/2005 (Year 1), 2005/2006 (Year 2) and 2006/2007 (Year 3). The contracts set a Base Price of $4.32 per gallon for 388,800 gallons of medium acidity AJC and $3.92 per gallon for 680,400

gallons of low acidity AJC. The contracts provide for an upward/downward price buffer of a maximum of 20 cents per gallon from the original Base Price, depending on market conditions.

11. In addition, under the contracts, Apple & Eve receives a discount of .15 cents per gallon from Yantai for shipments made to ports on the west coast of the United States.

12. Pursuant to the contracts, Apple & Eve has the option to increase, unilaterally, the annual amount of AJC purchased by fifty percent (50%) provided that Apple & Eve gives notice to Yantai of the exercise of its option prior to January of each year.

13. For each of the years covered by the contracts, Apple & Eve elected to exercise its option to increase the amount of AJC purchased thereunder by fifty percent (50%).

14. For the 2004/2005 season (Year 1), Yantai shipped to Apple & Eve the base quantities of AJC plus the (50%) increase in quantity pursuant to Apple & Eve's exercise of its option. The price of the AJC was set pursuant to the terms of the contracts. Apple & Eve paid for the AJC shipped by Yantai.

15. With respect to the 2005/2006 season (Year 2), Apple & Eve exercised its option to increase the amount of AJC shipped by fifty percent (50%). Therefore, in addition to the base quantities under the contracts, Yantai was to supply Apple & Eve with an additional 88 loads of low acidity AJC and an additional 50 loads of medium AJC. In an email dated September 30, 2005, Titus Yung, CEO of Yantai California, wrote: "Thanks for your patience, North Andre was and will never shake off the commitment [sic]. Based upon your shipping schedule, we hereby confirm [Apple & Eve's] request for the exercise of the full option. Thanks for your business."

16. Shortly after Yantai confirmed Apple & Eve's exercise of the 50% increase option under both contracts for the 2005/2006 season, Yantai demanded an increase of 20 cents per gallon from the original Base Price – the maximum ceiling amount(s) under the contracts – in

3

order to supply both the base quantities and the additional AJC to Apple & Eve pursuant to the 50% increase option. Apple & Eve, in good faith, agreed to the price increase, resulting in a contract price of $4.12 per gallon for low acidity AJC and $4.52 per gallon for medium acidity AJC for Year 2.

17. In or about December 2005, Yantai informed Apple & Eve that it could supply no more than fifty-five percent (55%) of the base quantities required under the contracts. The reason given by Yantai was "a poor apple growing season" in China. Upon information and belief, this statement was false. Yantai claimed the force majeure provisions of the contracts excused its non-performance. That provision, in each of the contracts, states as follows:

> If the Seller is unable to deliver the goods in accordance with the agreed-upon schedule, in whole or in part, or if the Buyer is unable to accept delivery of the goods, by reason of fire, flood, earthquake, labor dispute, war, act of God, embargo, civic disturbance, governmental regulation, or causes beyond the Seller's/Buyer's control, the Seller/Buyer will have the option of cancelling all or part of the undelivered orders or unfulfilled parts thereof. ***The inability to fulfill this agreement does not include crop shortages, poor growing or weather conditions, poor quality apples or unstable fruit.*** (Emphasis in original).

18. Yantai claimed that the poor apple growing season in China was covered by the force majeure provisions of the contracts, notwithstanding the express exclusion of "crop shortages, poor growing or weather conditions" cited therein.

19. With respect to price, Yantai claimed that despite the price set forth in the contracts, it could not sell any amount of AJC to Apple & Eve for less than the "minimum export price" (MEP) of $4.58 per gallon for low acidity AJC and $4.90 per gallon for medium acidity AJC.

20. Yantai informed Apple & Eve that Yantai had already supplied local traders in China with sufficient amounts of AJC to cover Apple & Eve's requirements. Yantai advised

4

Apple & Eve to contract with Yantai's traders directly to deliver covering goods – albeit at a higher price per gallon for either acidity.

21.   Apple & Eve informed Yantai that the force majeure provisions of the contracts clearly exclude crop shortages and/or poor growing conditions, and that Yantai, at a minimum, should secure additional volume from its traders and other sources directly in order to meet its obligations under the contracts at the set price per gallon. Yantai refused to do so.

22.   From on or about December 15 through December 29, 2005, the parties engaged in several conference calls in an effort to resolve their issues. Yantai maintained its position that it was unable to deliver more than fifty-five percent (55%) of the base quantities of AJC called for under the contracts and that it was unable to sell that amount of AJC to Apple & Eve – or export AJC to any of its customers anywhere in the United States – for less than the MEP. Yantai claimed that if it sold AJC to Apple & Eve for anything less than the MEP, it would risk losing its export license.

23.   Upon information and belief, the foregoing statements were false and made in bad faith by Yantai. Upon further information and belief, Yantai was shipping, and had shipped, AJC to customers in the United States at prices below the MEP for years.

24.   On or about December 29, 2005, Yantai confirmed that it would only provide fifty-five percent (55%) of the base quantities of AJC called for under the contracts to Apple & Eve at the MEP. Yantai again cited force majeure. Specifically, Yantai would supply only 96 loads of low acidity AJC at a price of $4.58 per gallon and 55 loads of medium acidity AJC at a price of $4.90 per gallon, resulting in significant and increased costs incurred by Apple & Eve as a direct result of Yantai's breaches of the contracts. The price difference alone for the quantities described amounted to approximately $252,953.00 in increased costs to Apple & Eve.

5

25. Yantai informed Apple & Eve that one of Yantai's traders, Qingdao Yuhua Import & Export Co., Ltd. ("Yuhua"), had sufficient AJC to make up for the shortfall in the base quantities set forth in the contracts, but that Apple & Eve would have to contract <u>directly</u> with Yuhua at a flat rate of $5.70 per gallon for both acidities of AJC to cover the forty-five percent (45%) shortfall in base quantities caused by Yantai's breaches.

26. Yantai informed Apple & Eve that Yantai had already provided Yuhua with enough AJC to meet Apple & Eve's requirements. Citing Yantai's existing business relationship with Yuhua, Apple & Eve proposed that Yantai obtain covering goods from Yuhua directly in order to meet Yantai's obligations to Apple & Eve under the contracts. Yantai refused to do so.

27. On January 12, 2006, to cover for its losses, Apple & Eve contracted with Yuhua for 79 loads (307,152 gallons) of low acidity AJC and 45 loads (174,960 gallons) of medium acidity AJC to make up for the forty-five percent (45%) shortfall in base quantities that Yantai failed and refused to deliver to Apple & Eve. Yuhua charged Apple & Eve $5.70 per gallon for both acidities, resulting in significant and increased costs of no less than $670,000.00 incurred by Apple & Eve as a direct result of Yantai's breaches of the contracts. In addition, Apple & Eve was forced to go out into the market to obtain additional amounts of AJC – also at an average cost of $5.70 per gallon.

28. With respect to the additional 88 loads of low acidity AJC and 50 loads of medium acidity AJC, which Yantai was obligated to supply pursuant to the 50% increase option exercised by Apple & Eve under the contracts, Apple & Eve was forced to go out into the market to obtain covering goods, resulting in significant and increased costs of no less than $770,000.00 incurred by Apple & Eve as a direct result of Yantai's breaches of the contracts.

6

29. Additionally, despite Yantai's undertaking to provide fifty-five percent (55%) of the base quantities of AJC called for under the contracts to Apple & Eve for the 2005/2006 season (Year 2), Yantai ultimately failed to deliver even that amount to Apple & Eve; Yantai's shipments of AJC to Apple & Eve were short by 20 loads. As a direct result of Yantai's breaches, Apple & Eve was forced to go out into the market to obtain covering goods at significantly higher prices in order to meet its requirements.

30. Apple & Eve has made several attempts to negotiate in good faith with Yantai in an effort to resolve the issues described herein, for the years covered by the contracts. As recently as July 2006, Apple & Eve requested proposals from Yantai to compensate Apple & Eve for its losses incurred during the 2005/2006 season (Year 2), and to ensure that Yantai would honor the contracts for the 2006/2007 season (Year 3). Yantai has failed to respond meaningfully to Apple & Eve with any reasonable terms to resolve the issues set forth herein. Despite due demand, Yantai has refused to compensate Apple & Eve for its losses incurred to date and provide adequate assurances that it would deliver AJC for the 2006/2007 season pursuant to the terms of the contracts.

31. As set forth above, Apple & Eve exercised the 50% increase option for all three years of the contract – including the 2006/2007 season (Year 3). Just as it did for Year 2, Apple & Eve, in good faith, agreed to pay Yantai 20 cents more per gallon from the original Base Price for both acidities – the maximum ceiling amount(s) under the contracts – for the additional amounts for Year 3. Yantai has not delivered or shipped <u>any</u> AJC to Apple & Eve for Year 3.

32. Accordingly, and as a direct result of Yantai's breaches and its failure to provide Apple & Eve with adequate assurances that it would honor the terms of the contracts for the 2006/2007 season (Year 3), Apple & Eve was compelled to contract with other suppliers to meet

7

its needs for Year 3. Apple & Eve has incurred significant and increased costs due to Yantai's breach of its Year 3 obligations in an amount of no less than $2,331,000.00.

33. Yantai has breached its performance obligations under the contracts, forcing Apple & Eve to go out into the market and contract with other vendors to obtain covering goods at higher prices. As a direct result of Yantai's breaches of the contracts, Apple & Eve incurred – and will continue to incur – additional costs and fees in arranging for and obtaining covering goods.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

34. Apple & Eve repeats and realleges the allegations set forth in paragraphs 1 through 33, as if set forth fully herein.

35. Apple & Eve and Defendant entered into contracts whereby Defendant agreed to supply AJC to Apple & Eve according the terms of the contracts. Apple & Eve agreed to compensate Defendant for delivery of the AJC.

36. Apple & Eve has performed all conditions, covenants and promises required on its part in accordance with the terms and conditions of the contracts, except as excused by Defendant's breaches. Any nonperformance on the part of Apple & Eve is excused because Defendant's performance of its contractual obligations was a condition precedent to Apple & Eve's full performance. Defendant has refused – and continues to refuse – to perform its obligations under the contracts, thereby excusing Apple & Eve from fully performing.

37. Defendant has, at all times, failed, refused and neglected to perform according to the terms of the contracts and has failed to deliver the AJC specified thereunder for the agreed-upon price.

38.   As set forth herein, Apple & Eve has demanded that Defendant deliver the AJC specified in the contracts for the agreed-upon price, but Defendant failed and refused – and continues to fail and refuse – to deliver the specified AJC for the agreed-upon price, and to provide adequate assurances to Apple & Eve that such AJC will be shipped in accordance with the terms of the contracts.

39.   Defendant's breaches have forced Apple & Eve to incur substantial costs in finding substitute AJC of equivalent quality.

40.   As a direct and proximate result of Defendant's breaches, Apple & Eve has been damaged in excess of $4,000,000, plus interest, and has incurred further damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

41.   Apple & Eve repeats and realleges the allegations set forth in paragraphs 1 through 40, as if fully set forth herein.

42.   Implicit in the contracts between Apple & Eve and Defendant was a covenant that both parties would use their best efforts to uphold the terms of the contracts. This covenant required both parties to act in good faith, at all times, in an attempt to ensure that the AJC was delivered in accordance with the terms of the contracts without interruption.

43.   Defendant breached this implied covenant of good faith and fair dealing arising out of the contracts by deliberately acting in a manner which deprived Apple & Eve the benefits of those contracts. Apple & Eve, upon information and belief, alleges that Defendant intentionally ceased delivering AJC at the agreed-upon price, thereby purposefully depriving Apple & Eve of benefits under the contracts.

9

44.     As a direct and proximate result of Defendant's breaches, Apple & Eve has been damaged in excess of $4,000,000, and has incurred further damages in an amount to be determined at trial.

WHEREFORE, Apple & Eve respectfully requests that this Court enter judgment against Defendant, the total amount of which to be determined at trial, but not less than $4,000,000, together with prejudgment interest as provided by law, and for such other and further relief as this Court deems just and proper, including, without limitation, Apple & Eve's costs and fees incurred, including attorneys' fees.

Dated: December 5, 2006

MOSES & SINGER LLP

By: _____
Jay R. Fialkoff, Esq.
Jennifer Nigro, Esq.
Attorneys for Plaintiff
405 Lexington Avenue
New York, New York 10174
(212) 554-7800