# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

---

№ 07-CV-745 (JFB) (WDW)

---

APPLE & EVE, LLC,

Plaintiff,

VERSUS

YANTAI NORTH ANDRE JUICE CO. LTD.,

Defendant.

---

MEMORANDUM AND ORDER
June 20, 2007

---

JOSEPH F. BIANCO, District Judge:

Plaintiff Apple & Eve, LLC, brings the instant action alleging breach of contract against defendant Yantai North Andre Juice Co. Ltd. Presently before the Court is defendant's motion to compel arbitration in China pursuant to the New York Convention on the Recognition and Enforcement of foreign Arbitral Awards, June 10, 1958 ("New York Convention" or the "Convention") and to dismiss the complaint. The issue presented is whether this Court must compel arbitration in China despite the parties' failure to identify an arbitration organization in the arbitration clauses of their contracts, in light of the Arbitration Law of the People's Republic of China ("PRC").

I. BACKGROUND

A. FACTS

The following limited set of facts are derived from the complaint filed in this action.

Plaintiff, a Delaware limited liability company with its principal place of business located in Nassau County, New York, is engaged in the business of purchasing and distributing apple juice. (Compl. ¶ 1.) Defendant, a producer of apple juice concentrate and other juice products, is a corporation organized under the laws of the PRC, with its principal place of business in Yantai, Shandong Province, China. (*Id*. ¶¶ 2-3.) Defendant's business is a large-scale,

global operation that ships its products around the world, including to the United States. (*Id.* ¶ 3.) In June 2004, the parties entered into two contracts, by which defendant was to supply apple juice concentrate to plaintiff (hereinafter "the Contracts"). (*Id.* ¶ 5.) The Contracts that are the subject of the instant dispute were negotiated in New York. (*Id.*) Paragraph 16 of the Contracts (hereinafter "the Arbitration Clause") provides:

> Arbitration: Any controversy or claim arising out of or relating to this contract or breach thereof, shall be settled by negotiation between two parties. If no settlement can be reached, the claim in dispute shall then be submitted or [sic] arbitration in the country of defendant in accordance with the arbitration organization of the defendant country.

According to the complaint, in late 2005, defendant breached its obligations under the contracts. (Compl. ¶¶ 6-33.) Plaintiff alleges that it attempted to amicably resolve the dispute, but its efforts to negotiate were unsuccessful. (*Id.* ¶ 30.) Thereafter, plaintiff commenced the instant action.

B. PROCEDURAL HISTORY

Plaintiff commenced this action in the Supreme Court of the State of New York, County of Nassau, on December 5, 2006. Defendant removed the action to this Court on February 21, 2007, pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1332. Thereafter, on February 26, 2007, defendant filed the instant motion to compel arbitration. Oral argument was held on the motion on June 19, 2007.

II. DISCUSSION

"In the context of motions to compel arbitration brought under the Federal Arbitration Act . . . the court applies a standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003) (citing *Par-Knit Mills v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54, n.9 (3d Cir. 1980)). Therefore, "[i]f there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary." *Bensadoun*, 316 F.3d at 175 (citing 9 U.S.C. § 4). In the instant case, there are no issues of fact as to the making of the Arbitration Clause in the Contracts; rather, the issue presented to the Court by the parties is a matter of contract interpretation.

A. The Arbitration Clause

"'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Corp.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). The parties agree that this action is governed by the New York Convention, implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, as the transaction involves a Chinese corporation, and both the United States and China are parties to the Convention. (Pl.'s Opp. Mem. at 6; Def.'s Mem. at 7.) "The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the

2

recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974). Thus, the strong federal policy that favors arbitration of disputes applies with equal force to international transactions.

Pursuant to the Convention, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States. Such court may also appoint arbitrators in accordance with the provisions of the agreement." 9 U.S.C. § 206. "An agreement to arbitrate exists within the meaning of the Convention and the FAA if: (1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope." *U. S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001). "Upon finding that such an agreement exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement," *id.*, "unless [the court] finds that the said agreement is null and void, inoperative or incapable of being performed." 9 U.S.C. § 201 (Article II of the Convention). Therefore, "so long as the parties are bound to arbitrate and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration and thereby enforce the New York Convention as provided in chapter 2 of the FAA, even though the agreement in question requires arbitration in a distant forum." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) (holding that "the district court erred in refusing to order arbitration on the ground that it lacked authority to enforce an injunction abroad" but affirming denial of compulsory arbitration because plaintiffs were not signatories to the underlying contract). Plaintiff does not dispute the existence of any of the factors described in *U.S. Titan, Inc.* Plaintiff concedes that there is a written agreement, the agreement provides for arbitration in the territory of a signatory, and that the subject matter is commercial and not entirely domestic in scope. Thus, plaintiff effectively concedes that there is an agreement in writing to arbitrate the dispute. However, plaintiff argues that because the Arbitration Clause designates neither a *situs* for arbitration in China nor an arbitration organization in China, this Court is without power to direct that arbitration take place in China pursuant to § 206. (Pl.'s Mem. at 7-9.) The Court disagrees.

The Second Circuit has instructed that "[t]o determine whether to compel arbitration pursuant to Section 206, courts inquire 'whether the parties agreed to arbitrate, and, if so, whether the scope of that agreement encompasses the asserted claims.'" *Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 49 (2d Cir. 2004) (quoting *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 249 (2d Cir. 1991)). Neither of these issues are in dispute in the present case. Thus, because plaintiff does not dispute the existence of the factors that require this Court to refer the case to arbitration, it must be said that plaintiff is attempting to invoke the "null and void, inoperative or incapable of being performed" provision. *See* 9 U.S.C. § 201 (Article II of the Convention). Plaintiff essentially asserts two arguments under the "null and void"

3

provision: (1) the parties' failure to identify a *situs* other than "the country of defendant" fails to comply with § 206 and is a mistake; and (2) under Chinese law, if an arbitration agreement fails to designate an arbitration commission, the agreement is "null and void" and thus, "incapable of being performed."[1]

"The limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations – such as fraud, mistake, duress, and waiver – that can be applied neutrally on an international scale.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 80 (1st Cir. 2000)); *see also Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992) ("[W]e agree with the Third Circuit and its reasoning to the effect that the 'null and void' exception in the Convention is to be narrowly construed." (citing *See Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983)); *Khan v. Parsons Global Serv., Ltd.*, 480 F. Supp. 2d 327, 340 (D.D.C. 2007) (holding that unconscionability is not a recognized defense under the Convention's "null and void" clause); *Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Serv., Inc.*, 760 F. Supp. 1036, 1043 (E.D.N.Y. 1991) ("This is a narrow exception limited to cases in which the arbitration clause itself (1) is 'subject to an internationally recognized defense such as duress, mistake, fraud, or waiver' or (2) 'contravenes fundamental policies of the forum state.'" (quoting *Rhone*, 712 F.2d at 53).

Contrary to plaintiff's assertion, the parties' failure to identify a *situs* more specific than China is not a "mistake" rendering the provision "null and void." Plaintiff primarily relies on three cases for this position. However, none of the cases cited by plaintiff persuade the Court that it should deny the motion to compel arbitration in accordance with the language of the Arbitration Clause, and in contravention of the strong federal policy in favor of arbitration.

Recognizing that "the Convention's 'null and void' exception is to be narrowly construed," in *Rosgoscirc on Behalf of SOY/CPI P'ship v. Circus Show Corp.*, Nos. 92-CV-8498, 93-CV-1304 (JSM), 1993 WL 277333, at *4 (S.D.N.Y. July 16, 1993), the court held that "the inclusion of a non-existent forum should be classified as a mistake and a proper exception under Article (II)(3)." *Id*. More specifically, the agreement in that provided that arbitration would take place before the "International Arbitration in the Hague (the Netherlands)" – a non-existent entity. *Id*. at *3. In *Rosgoscirc*, the parties conceded that the designation of a "non-existent forum was a mutual mistake" and, thus, the court declared the provision void. *Id*. In contrast, this action does not involve a non-existent forum; rather, plaintiff complains of the lack of specificity of the forum. However, pursuant to § 206, China is the clear forum for arbitration in the instant matter.

In *Jain v. de Méré*, 51 F.3d 686 (7th Cir. 1995), the United States Court of Appeals for the Seventh Circuit affirmed the district court's denial of a motion to compel arbitration where the arbitration clause provided that "Any disagreement arising out of this contract may only be presented to an arbitrary commission applying French laws."

---

[1] Though plaintiff opposes the motion to compel arbitration in China, plaintiff would not oppose arbitration in New York. (Pl.'s Mem. at 17-19.)

4

*Id*. at 688. The Court held that the parties' failure to identify an arbitration site precluded the court from granting a motion to compel. *Id*. at 689. Specifically, the court noted that the fact "[t]hat French law will govern the arbitration between de Méré and Jain does not dictate what site for arbitration to choose or how an arbitrator should be selected." *Id*. at 689 n1. Unlike in *Jain*, the parties here designated an arbitration site – the country of defendant, in this case, China.

Finally, in *Bauhinia Corporation. v. China National Machinery & Equipment Import & Export Corporation*, 819 F.2d 247 (9th Cir. 1987), the court was confronted with two arbitration clauses – one designating the submission of arbitration to the China Counsel for the Promotion of International Trade, and a second clause intentionally leaving blank the place of arbitration. *Id*. at 248. The district court granted the motion to compel arbitration, but ordered that the parties submit the matter to the American Arbitration Association ("AAA"). *Id*. On appeal, defendant argued that the district court erred by not designating the China Council for the Promotion of International Trade as the arbitration agency. *Id*. at 248-49. The Ninth Circuit affirmed, holding that in light of the two mutually exclusive paragraphs, the contract was ambiguous on the forum selection issue, leaving the location for arbitration open. Thus, because "by its terms, Section 206 does not permit a court to designate a foreign forum when the agreement fails to designate a place" the court held that the district court properly ordered arbitration before the AAA.[2] *Id*. at 250. In contrast to the clauses at issue in *Bauhinia*, the parties in the instant action unambiguously indicated their intent to arbitrate disputes *and* unambiguously identified a location – the country of the defendant, here, China. Thus, the limited exception in the Convention encompassed in the "null and void" clause does not permit plaintiff to avoid its obligation to arbitrate its claims in the instant case in China.

The heart of plaintiff's argument lies in plaintiff's second point – that the Arbitration Clause is invalid in China and thus, incapable of being performed. In support of its argument, plaintiff submits the declaration of Mr. Liu Yuwu (hereinafter "Liu Declaration"), an attorney with extensive experience in Chinese law who specializes in international litigation and arbitration. (Liu Decl. ¶¶ 1-3.)

The Arbitration Clause at issue recites that "[i]f no settlement can be reached, the claim in dispute shall then be submitted or [sic] arbitration in the country of defendant in accordance with the arbitration organization of the defendant country." *See supra* p. 2. As stated *supra*, § 206 allows a court to order that arbitration be conducted "in accordance with the agreement." 9 U.S.C. § 206. In accordance with the plain language of § 206 and the Arbitration Clause, arbitration shall take place in China in accordance with the arbitration organization in China. However, plaintiff points out that there are currently 186 arbitration commissions in mainland China, and, as of the date of the contract, there were 173. (Liu Decl. ¶ 51.) The parties agree that, based on the language of the Arbitration Clause, the Arbitration Law of the People's

---

[2] Because the parties failed to resolve the forum selection issue, the Court ordered arbitration in the Eastern District of California before the AAA pursuant to its authority under 9 U.S.C. § 4.

*Bauhinia Corp*, 819 F.2d at 250.

5

Republic of China (attached as Appendix B to Liu Decl, hereinafter "PRC Arbitration Law") applies. The following provisions of PRC Arbitration Law are relevant to the instant dispute:

> Article 16. An agreement for arbitration shall include the arbitration clauses stipulated in the contracts or other written agreements for arbitration reached before or after a dispute occurs. An arbitration agreement shall include the following particulars:
> (1) an expression of intention to apply for arbitration;
> (2) matters for arbitration; and
> (3) a designated arbitration commission.
>
> Article 17. An agreement for arbitration shall be invalid in one of the following cases:
> 1. The matters agreed for arbitration exceed the scope of arbitration provided by law.
> 2. Agreements concluded by people being incapable or restricted in civil acts.
> 3. An agreement forced upon a party by the other party by means of coercion.
>
> Article 18. Whereas an agreement for arbitration fails to specify or specify clearly matters concerning arbitration or the choice of arbitration commission, parties concerned may conclude a supplementary agreement. If a supplementary agreement cannot be reached, the agreement for arbitration is invalid.

Plaintiff points to numerous People's Republic of China Supreme People's Court cases enforcing Article's 16 and 18, and holding arbitration clauses invalid where the clause did not identify an arbitration commission and no supplemental agreement was reached.[3] *See, e.g.*, (Liu Decl. Ex. D (*Yixuan (Quanzhau) Light Industry Co., Ltd. v. Ju Anqin*, (Sup. People's Ct. June 6, 2003) ("The arbitration clause in the contract signed by the parties to this case does not establish an arbitration committee and moreover they have been unable to reach a supplementary agreement; therefore based on the abovementioned regulations, this arbitration clause should be held invalid.")) (Liu Decl. Ex. F (*Johnson Controls (Hong Kong) Co., Ltd. v. Shenzhen Feiling Intelligence Sys. Integration Co., Ltd.* (Sup. People's Ct. July 27, 2004) ("But this arbitration clause only provides that disputes 'should be submitted to and decided by a Chinese arbitration institution dealing with foreign-related contracts', and does not explicitly provide with respect to the arbitration institution. Moreover the parties have not arrived at a new agreement with respect to an arbitration institution. Therefore, . . . this arbitration clause should be held invalid.")); *see also* (Liu Decl. Ex. H (*Zublin Int'l GmbH v. Wuxi Woke Gen. Eng'g Rubber Co., Ltd.* (Sup. People's Ct. July 8, 2004) ("[A]lthough the expression of intention to apply for arbitration, arbitration rules, and arbitration location are explicitly given, yet however an arbitration institution is not indicated explicitly. Therefore the arbitration clause should be held invalid.")). Plaintiff, however, points to no United States federal cases where a court has applied the law of the foreign country and declared that an arbitration clause would be invalid under

---

[3] Plaintiff provides certified English translations of these cases as exhibits to the Liu Declaration.

6

that country's law. Nor does plaintiff point to People's Republic of China cases where it is clear that the parties brought a dispute arising under an arbitration agreement subject to the Convention before an arbitration association in China. In any event, though district courts "may find and apply foreign law" and are in fact, urged to do so, *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998), for the reasons that follow, the Court finds that a further review of Chinese law is not necessary in the instant case. *See* Fed. R. Civ. P. 44.1 ("The court, in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence. The court's determination shall be treated as a ruling on a question of law.").

Recognizing that Article 18 allows the parties to cure the defect in the Arbitration Clause, plaintiff asserts that its institution of this action is sufficient under the laws of the People's Republic of China to conclude that no supplemental agreement could be reached by the parties. *See* (Liu Decl. Ex. E (*Sinochem Int'l Petroleum (Bahama) Co. Ltd. v. Hainan Changsheng Petroleum Development Co. Ltd* (Sup. People's Ct. Dec. 5, 2000) ("Given that what the parties in this case have covenanted regarding arbitration is unclear, and one party has brought suit in the relevant People's Court, it is clear that both parties have been unable to reach a supplementary agreement regarding an arbitration institution.")); (Liu Decl. Ex. G (*Shenzhen Huahancheng Trade Dev. Co., Ltd. v. Baerlocher Far E. Chemical Private Ltd.* (Sup. People's Ct. Sept. 13, 2005) ("At present, the one party . . . has already brought suit in the People's Court, and it can be concluded that both parties have been unable to reach a supplementary agreement regarding an arbitration institution.")). However, these PRC cases do not stand for the proposition that the filing of the action in a *foreign jurisdiction* (i.e., the United States) means that the parties could not reach a supplemental agreement, and this Court declines to assume that PRC courts would reach such a conclusion. Thus, because the alleged defect in the Arbitration Clause is curable under PRC law, this Court declines to hold that the Arbitration Clause is incapable of being performed at this time.

Plaintiff would have this Court make two predictions: (1) that no supplemental agreement could be reached if the Court were to compel arbitration in China – in other words, plaintiff seeks to have this Court find that it is a foregone conclusion that the parties will not reach a supplemental agreement if compelled to arbitrate in China, and (2) that if no supplemental agreement were reached, the Arbitration Clause would be declared void by a Chinese arbitration commission or a Chinese Court, under Chinese Arbitration law.[4] Plaintiff's efforts to preemptively file this lawsuit and have this Court reach these conclusions regarding future conduct of the parties and the Chinese court system, thereby allowing plaintiff to avoid its clear obligation in the Agreement to arbitrate in China, must

---

[4] According to the Liu Declaration, despite defendant's contention that the Chinese courts or the China International Economic and Trade Arbitration Commission ("CIETAC") could choose the proper arbitral body, Chinese courts do not have the power to appoint arbitrators on behalf of the parties. (Liu Decl. ¶ 57.) However, the Liu Declaration also notes that, despite the lack of power by the Chinese courts to appoint arbitrators on behalf of parties, "courts in some jurisdictions may do so." (*Id.*)

fail.[5] Given the factual and legal variables required for the argument to be declared invalid in the PRC, the Court cannot determine as a matter of law that the Arbitration Clause is incapable of being performed in China. *See Rhone Mediterranee Compagnia*, 712 F.2d at 52-54 (affirming district court order staying action pending arbitration in Italy even though Italian law stated that "in Italy an arbitration clause calling for an even number of arbitrators is null and void" and the arbitration clause at issue called for an even number of arbitrators), *abrogated on other grounds by Zosky v. Boyer*, 856 F.2d 554 (3d Cir. 1988); *Acosta v. Norwegian Cruise Line, Ltd.*, 303 F. Supp. 2d 1327, 1332 (S.D. Fla. 2003) (granting motion to compel arbitration in the Philippines despite uncertainty as to "whether the parties will obtain arbitration in the Philippines"); *Marchetto v. De Kalb Genetics Corp.*, 711 F. Supp. 936, 939-40 (N.D. Ill. 1989) (compelling arbitration in Italy despite plaintiff's contention that the arbitration was incapable of performance in Italy and noting that "[u]nderlying the Supreme Court's willingness to enforce arbitration agreements is the assumption that signatory nations to the Convention will honor arbitration agreements and reject challenges to arbitration based on legal principles unique to the signatory nation").

Furthermore, defendant points to the recent promulgation of the Supreme People's Court of the People's Republic of China Interpretation No. 7 dated September 8, 2006 (hereinafter "Interpretation No. 7") which includes the following provision:

> Article 3: Where the name of the arbitration institution which is stipulated in an arbitration agreement is inaccurate, but the specific arbitration institution can nevertheless be determined therefrom, the arbitration institution shall be deemed to have been selected.

(Interpretation No. 7, attached as Exhibit C to Liu Decl.) Defendant points out that the PRC's recent promulgations manifest a liberalization of the arbitration rules by China. Though the provision described above, on its face, does not appear to remedy the Arbitration Clause at issue in the instant case, it does serve to further caution this Court, especially where plaintiff has cited no PRC cases that have addressed the precise factual circumstances presented here, from declaring that the instant dispute is incapable of arbitration in China.

Plaintiff fears that arbitration in China is a fruitless effort and asserts that it is seeking to pursue the case in the United States in order to

---

[5] Defendant proposes that the parties conduct the arbitration before CIETAC. However, plaintiff points out that the parties have not agreed to arbitrate before CIETAC. By pointing out that no such agreement exists, the Court assumes that plaintiff does not now agree to arbitrate before CIETAC, and the Court agrees with plaintiff that it would be improper for the Court to compel arbitration before CIETAC. However, were arbitration brought before CIETAC, CIETAC Arbitration Rules provide that "[t]he CIETAC shall have the power to determine the existence and validity of an arbitration agreement and its jurisdiction over an arbitration case. The CIETAC may, if necessary, delegate such power to the arbitral tribunal." CIETAC Arbitration Rules (Revised and Adopted by the China Counsel for the Promotion of Intn'l Trade/China Chamber of Int'l Commerce on Jan. 11, 2005, effective May 1, 2005), Art. 6, available at www.cietac.org.cn/english/rules/rules.htm (hereinafter "CIETAC Arbitration Rules").

proceed with the action expeditiously. However, plaintiff is the master of its own destiny when it comes to the speed at which this dispute may be resolved. If plaintiff fears that arbitration in China will be sluggish or even unavailable without the identification of an arbitration commission, plaintiff can create a supplemental agreement with defendant pursuant to PRC arbitration law.

Thus, in accordance with the strong principles favoring arbitration in international disputes and in an effort to enforce the plain language of the parties' Agreement, defendant's motion to compel arbitration is granted.

B. Plaintiff's Request for a Stay of the Action

The FAA provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3; *see also DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 725 (S.D.N.Y. 2003) ("Although the Convention contains no express provision concerning a stay of the underlying litigation, such authority exists both implicitly, as well as by incorporation of Chapter 1 into Chapter 2 and the Convention through 9 U.S.C. § 208.") Plaintiff seeks to have the Court stay the action pending arbitration in China. The parties agree that it is within this Court's discretion to stay the action. Because there is a possibility that the parties will not be able to arbitrate their disputes in China, in the interests of justice, this action is stayed. *See, e.g.*, *Acosta*, 303 F. Supp. 2d at 1332 (staying action pending arbitration in Philippines).

III. CONCLUSION

Defendant's motion to compel arbitration in China is GRANTED. Accordingly, it is hereby ordered that plaintiff submit its claims to arbitration in China pursuant to the parties' Agreement. The instant action is STAYED pending arbitration in China.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: June 20, 2007
Central Islip, New York

\* \* \*

The attorneys for plaintiff are Jay R Fialkoff, Esq., Robert D. Lillienstein, Esq., and Jennifer Nigro, Esq., Moses & Singer LLP, 405 Lexington Avenue, New York, New York 10174. The attorneys for defendant are Stephen M. Baldini, Esq. and Peter Guirguis, Esq., Akin Gump Strauss Feld LLP, 590 Madison Avenue, New York, New York 10022, and Andrew E. Anselmi, Esq. and Generosa Chirichiello, Esq., McCusker, Anselmi, Rosen, Carvelli & Walsh, P.C., 127 Main Street, Chatham, New Jersey 07928.