APPLE & EVE, LLC,

         Plaintiff,

VERSUS

YANTAI NORTH ANDRE JUICE CO. LTD.,

         Defendant.

───────────────

MEMORANDUM AND ORDER
April 27, 2009
───────────────

JOSEPH F. BIANCO, District Judge:

 Plaintiff Apple & Eve, LLC, a Delaware limited liability company in the business of purchasing and distributing apple juice, filed the instant action on December 5, 2006, alleging breach of contract against defendant Yantai North Andre Juice Co. Ltd., a producer of apple juice concentrate and other juice products organized under the laws of the People's Republic of China ("PRC"). On June 20, 2007, the Court granted defendant's motion to compel arbitration in China pursuant to paragraph 16 of the contracts between the parties that are at issue in this litigation (the "Arbitration Clause") and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 ("New York Convention" or the "Convention"), implemented by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208. In its discretion and in the interests of justice, the Court further granted plaintiff's request for a stay of this action pending such arbitration.

 Presently before the Court is plaintiff's second motion to vacate the stay in this case. For the reasons set forth herein and on the record during the April 24, 2009 conference, the Court finds that defendant has waived its right to arbitration, thereby rendering the Arbitration Clause null and void under 9 U.S.C. § 201 (Article II of the Convention), and grants plaintiff's motion to vacate the June 20, 2007 Order compelling arbitration and staying this action.

## I. BACKGROUND

### A. FACTS

For the purposes of this motion, the Court assumes familiarity with the facts, as set forth in the Court's prior Memorandum and Order addressing defendant's motion to compel arbitration, dated June 20, 2007.

### B. PROCEDURAL HISTORY

Plaintiff commenced this action in the Supreme Court of the State of New York, County of Nassau, on December 5, 2006. Defendant removed the action to this Court on February 21, 2007, pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1332. Thereafter, on February 26, 2007, defendant filed a motion to compel arbitration. On June 20, 2007, the Court granted defendant's motion to compel arbitration in China. Specifically, the Court held that despite the parties' failure to identify an arbitration organization in the Arbitration Clause, in light of the Arbitration Law of the PRC, the Court could not conclude, as a matter of law, that the Arbitration Clause would be declared void under Chinese law or that no supplemental agreement between the parties could be reached if the Court were to compel arbitration in China. In accordance with the strong principles favoring arbitration in international disputes and in an effort to enforce the plain language of the parties' agreement in the Arbitration Clause, the Court granted defendant's motion to compel. Furthermore, in the interests of justice, the Court stayed this action pending the arbitration.

On February 25, 2008, plaintiff filed a motion to vacate the stay or, in the alternative, to compel arbitration in New York, based on defendant's alleged refusal to arbitrate before the Hong Kong International Arbitration Commission ("HKIAC"). On the record during oral argument on September 22, 2008, the Court denied plaintiff's motion to vacate the stay as premature because of the absence of a ruling by a Chinese court or arbitration commission as to the enforceability of the arbitration provision in question. The Court therefore denied the motion without prejudice to its renewal at a later stage. Plaintiff thereafter again sought arbitration of these claims before the HKAIC by requesting that defendant appoint a second arbitrator. By letter dated October 27, 2008, defendant's counsel in Shandong, China rejected plaintiff's offer and referenced a case filed on January 15, 2008 in mainland China "requesting that the terms of the arbitration of the foregoing contract be nullified." (*See* Affirmation of Jay R. Fialkoff in Support, Exh. J.)

On November 24, 2008, plaintiff filed a second motion to vacate the stay in this action, based upon newly discovered evidence. Specifically, plaintiff claimed that unbeknownst to it and the Court, defendant had filed a petition before the Intermediate People's Court of Yantai in China nearly one year earlier on January 15, 2008, seeking to have the same Arbitration Clause at issue in this litigation declared invalid by a Chinese court ("the Yantai petition"). (*See* Affirmation of Jay R. Fialkoff in Support, Exh. A.) On January 12, 2009, the Court ordered defendant to respond with any objections to plaintiff's motion by January 19, 2009. No response was made by defendant at that time. Although the Court may have considered the motion to vacate the stay unopposed in light of defendant's failure to respond to the motion over the course of four months, on April 14, 2009, in an abundance of caution and in light of counsel for the

defendant's purported lack of awareness of plaintiff's pending motion or of defendant's Yantai petition, the Court held a telephone conference with counsel for the parties and permitted defendant a final opportunity to submit a response.

On April 21, 2009, defendant's counsel filed an affidavit in support of defendant's opposition to plaintiff's motion. In her affirmation, counsel stated that, "neither [she] nor any person from [her] law firm has had any communication with Yantai's Chinese counsel concerning this matter," but that a Yantai representative had informed her that "Yantai has instructed its Chinese counsel to withdraw the petition seeking a declaration that the arbitration provision is invalid and unenforceable." (Affirmation of Kimberly Summers, Esq. in Support of Defendant's Opposition ¶¶ 4-5.) Further, Yantai proposed to consent unconditionally to arbitrating plaintiff's claims before the HKIAC (*Id.* ¶ 6), the forum in which plaintiff had attempted to initiate arbitration following this Court's June 20, 2007 Order and where defendant had thereafter resisted arbitration because it was not located in Mainland China and argued that plaintiff was compelled by this Court's Order to agree to arbitration only in Mainland China. (*See* Plaintiff's Mem. of Law in Support, at 2-3.) On April 23, 2009, plaintiff filed its reply in further support of its motion to vacate the stay, arguing that defendant's opposition efforts were delay tactics designed to escape this Court's jurisdiction and that both parties have now effectively conceded that the Arbitration Clause is invalid under Chinese law. (*See* Affirmation in Further Support of Plaintiff's Motion to Vacate Stay ¶¶ 11, 12, 17.)

On April 24, 2009, in a telephone conference with counsel for both parties, the Court granted plaintiff's motion on the record and advised that this written Memorandum and Order would follow the Court's oral ruling.

II. DISCUSSION

A. Applicable Law

"Upon finding that [an agreement to arbitrate within the meaning of the Convention and the FAA] exists, a federal court must compel arbitration of any dispute falling within the scope of the agreement pursuant to the terms of the agreement," *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 146 (2d Cir. 2001), "unless [the court] finds that the said agreement is null and void, inoperative or incapable of being performed." 9 U.S.C. § 201 (Article II of the Convention). "The limited scope of the Convention's null and void clause 'must be interpreted to encompass only those situations – such as fraud, mistake, duress, and waiver – that can be applied neutrally on an international scale.'" *Bautista v. Star Cruises*, 396 F.3d 1289, 1302 (11th Cir. 2005) (quoting *DiMercurio v. Sphere Drake Ins. PLC*, 202 F.3d 71, 80 (1st Cir. 2000)); *see also Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 960 (10th Cir. 1992) ("[W]e agree with the Third Circuit and its reasoning to the effect that the 'null and void' exception in the Convention is to be narrowly construed.") (citing *See Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983)); *Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Serv., Inc.*, 760 F. Supp. 1036, 1043 (E.D.N.Y. 1991) ("This is a narrow exception limited to cases in which the arbitration clause itself (1) is 'subject to an internationally recognized defense such as duress, mistake,

fraud, or waiver' or (2) 'contravenes fundamental policies of the forum state.'") (quoting *Rhone*, 712 F.2d at 53).

With respect to the issue of waiver by a party, "[t]he right to arbitration, like any other contract right, can be waived." *Cornell & Co., Inc. v. Barber & Ross Co.*, 360 F.2d 512, 513 (D.C. Cir. 1966); *accord PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir. 1997); *Morales Rivera v. Sea Land of Puerto Rico, Inc.*, 418 F.2d 725, 726 (1st Cir. 1969); *see also Sucrest Corp. v. Chimo Shipping Ltd.*, 236 F. Supp. 229, 230 (S.D.N.Y. 1964) ("parties to an arbitration agreement, or either of them may by their conduct waive their right to arbitration."). "A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right." *Cornell & Co., Inc.*, 360 F.2d at 513. In this Circuit, "a party may waive its right to arbitrate in one of two ways:

> by expressly indicating that it wishes to resolve its claims before a court, *Gilmore v. Shearson/Amer. Express Inc.*, 811 F.2d 108, 112 (2d Cir. 1987), or by impliedly waiving its right to enforce a contractual arbitration clause by "engag[ing] in protracted litigation that results in prejudice to the opposing party." *S & R Co. of Kingston v. Latona Trucking*, 159 F.3d 80, 83 (2d Cir. 1998) (citations omitted); *see also Standard Microsystems Corp. v. Dahod*, 84 F. Supp. 2d 396, 398 (E.D.N.Y. 2000).

*Trustees of Plumbers Local Union No. 1 Welfare Fund v. Riverdale Assocs., LLC*, No. 07 Civ. 1740 (SLT) (JO), 2007 WL 1876593, at *3 (E.D.N.Y. June 28, 2007) (quoting *DeGraziano v. Verizon Commc'ns., Inc.*, 325 F. Supp. 2d 238, 244 (E.D.N.Y. 2004)).

In addition, there is no question that the Court has the power to consider whether a stay is justified pursuant to 9 U.S.C. § 3, which requires that the party requesting the stay is not "in default in proceeding with such arbitration." *See Doctor's Assocs. v. Distajo*, 66 F.3d 438, 454-55 (2d Cir. 1995); *see also Satcom Intern. Group PLC v. Orbcomm Intern. Partners, L.P.*, 49 F. Supp. 2d 331, 339 (S.D.N.Y. 1999) ("Waiver operates as 'an equitable defense' and is appropriately decided by the Court."). Indeed, the question of whether a party is "in default in proceeding with such arbitration" is a "statutorily mandated inquiry in § 3 cases." *Doctor's Assocs.*, 66 F.3d at 456. Importantly, "[o]nce having waived the right to arbitrate, that party is necessarily 'in default in proceeding with such arbitration.'" *Cornell & Co., Inc.*, 360 F.2d at 513 (internal citations omitted); *see also Marie v. Allied Home Mortgage Corp.*, 402 F.3d 1, 12-13 (1st Cir. 2005) (noting that the FAA permits courts to stay an action pending arbitration only if "the applicant for the stay is not in default in proceeding with such arbitration," 9 U.S.C. § 3, and courts have generally viewed parties who have waived their rights to arbitration as being in default). As one court has explained:

> While a substantial body of caselaw has developed on the meaning of the term "default," the touchstone of that analysis appears to be the Second Circuit's 1942 decision in *Kulukundis Shipping Co. v. Amtorg Trading Corp.*, 126

F.2d 978, 989 (2d Cir. 1942). There, the court interpreted the statute's limiting clause "to refer to a party who, when requested, has refused to go to arbitration or who has refused to proceed with the hearing before the arbitrators once it has commenced." *Id.*

Since that decision, courts interpreting that phrase have recognized that if a party takes actions inconsistent with its right to arbitrate, those actions may amount to a waiver. *PPG Indus., Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 109 (2d Cir. 1997); *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d 438, 455 (2d Cir. 1995) ("A party waives his right to arbitrate when he actively participates in a lawsuit or takes other action inconsistent with that right") (quoting *Cornell & Co. v. Barber & Ross Co.*, 360 F .2d 512, 513 (D.C. Cir. 1966) (per curiam)), *cert. denied*, 517 U.S. 1120 (1996). In a comprehensive opinion analyzing the development of the law on the waiver doctrine in the context of arbitration agreements, the Second Circuit observed that "the modern evolution of our waiver doctrine" has resulted in a judicial distinction "between cases where the waiver defense was based on prior litigation by the party seeking arbitration – when the court should decide the issue of waiver – and those when the defense was based on other actions [when the arbitrator[s] should decide the issue of waiver]." *Doctor's Assoc., Inc. v. Distajo*, 66 F.3d at 456).

*SDD99, Inc. v. ASA Intern., Ltd.*, No. 06 Civ. 6089 (CJS), 2007 WL 952046, at *6 (W.D.N.Y. Mar. 29, 2007).

In undertaking this analysis, the Court is mindful of the Supreme Court's guidance in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002), in which it stated that "the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Id.* at 85. However, "[d]espite the Supreme Court's decision in *Howsam*, several lower courts have remained reluctant to submit certain waiver issues to arbitrators. Both the First and Fifth Circuits have explicitly held that despite the Supreme Court's statement in *Howsam*, the specific type of waiver dispute at issue in this case – one involving an allegation of waiver due to litigation conduct – should be determined by a judge rather than an arbitrator." *Reidy v. Cyberonics, Inc.*, No. 1:06 Civ. 249, 2007 WL 496679, at *3 (S.D. Ohio Feb. 8, 2007) (citing *Marie*, 402 F.3d at 11); *Tristar Fin. Ins. Agency, Inc. v. Equicredit Corp. of Am.*, 97 Fed. Appx. 462, 464 (5th Cir. 2004)) (other citations omitted); *see also Am. Gen. Home Equity, Inc. v. Kestel*, 253 S.W.3d 543, 551-52 (Ky. 2008) ("*Howsam* did not actually reach the question of litigation-conduct waiver. Rather *Howsam* focused upon whether a party waived its arbitration rights by not complying with a contractual time limitation for asserting arbitration. Some federal courts have applied *Howsam*'s dicta to conclude that

5

litigation-conduct waiver must be decided by arbitrators, while other federal courts have continued to decide litigation-conduct waiver issues themselves even after *Howsam*. Given this divergence of federal of [sic] authority, we conclude that courts should generally resolve issues of litigation-conduct waiver. Questions of litigation-conduct waiver are best resolved by a court that has inherent power to control its docket and to prevent abuse in its proceedings (i.e. forum shopping), . . . and which could most efficiently and economically decide the issue as where the issue is waiver due to litigation activity, by its nature the possibility of litigation remains, and referring the question to an arbitrator would be an additional, unnecessary step.") (internal citations and quotations omitted); *Glazer's Distributors of Illinois, Inc. v. NWS-Illinois, LLC*, 876 N.E.2d 203, 215 (Ill. App. Ct. 2007) ("[W]e find that the circuit court here had the discretion to decide the issue of Glazer's purported waiver of its right to arbitration. Glazer's reliance on the United States Supreme Court's decision in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 123 S.Ct. 588, 154 L.Ed.2d 491 (2002), does not alter our conclusion. Notably, *Howsam* did not hold that issues of waiver must be decided by an arbitrator, but rather concluded that such issues were presumptively reserved for an arbitrator."). These courts have reasoned, as relevant to the matter at hand and stated *supra*, that "[a] 'default' [within the meaning of the statute] has generally been viewed by courts as including a 'waiver.' This language would seem to place a statutory command on courts, in cases where a stay is sought, to decide the waiver issue themselves." *Marie*, 402 F.3d at 13 (citations omitted). Although the Second Circuit has not ruled on this specific issue, courts in this Circuit have continued to apply Second Circuit precedent preceding *Howsam* to address the waiver issue in cases involving litigation conduct before the Court. *See, e.g., Haenel v. Washington Mut. Bank*, No. 07 Civ. 2320, 2007 WL 4326828, *3 (E.D.N.Y. Dec. 6, 2007); *SDD99, Inc. v. ASA Intern., Ltd.*, 2007 WL 952046, *6 (W.D.N.Y. Mar. 29, 2007); *Century Indem. Co. v. Clearwater Ins. Co.*, 2007 WL 1599157, *3 (S.D.N.Y. June 4, 2007); *Arbercheski v. Oracle Corp.*, No. 05 Civ. 0591, 2006 WL 1738046, *2 (S.D.N.Y. June 26, 2006); *Jung v. Skadden, Arps, Slate, Meagher & Flom, LLP*, 434 F. Supp. 2d 211, 217 (S.D.N.Y. 2006); *Katel LLC v. AT&T Corp.*, 2004 WL 1192072, *1 (S.D.N.Y. May 28, 2004); *see also Scott v. First Union Securities, Inc.*, 761 N.Y.S.2d 770, 771 (N.Y. Sup. Ct. 2003) ("*Howsam* involved a determination of whether a period of limitation, imposed by the rules of the arbitrator, should be determined by the courts or by the arbitrator. As such, to the extent that the decision addresses waiver issues it is dicta . . . . Indeed, in many cases decided since [*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983), cited by *Howsam*], the New York courts have determined whether a party's conduct constituted a waiver of the right to arbitrate an issue. The Court of Appeals two years after *Cone* stated '[l]ike contract rights generally, a right to arbitration may be modified, waived or abandoned.'") (citations omitted).

B. Application

Under the circumstances of this case, the Court finds that the Arbitration Clause falls within the Convention's limited exception of being declared "null and void." Specifically, defendant's unilateral and stealth action in filing the Yantai petition and seeking the invalidation of the Arbitration Clause in China has, in the Court's view, amounted to a waiver of defendant's right to arbitrate the proceeding

in China. As set forth below, this is a not a close case. It is clear to the Court that defendant has acted in a manner completely inconsistent with the preservation of its right to arbitrate.

This action was commenced by plaintiff on December 5, 2006. Over twenty-eight months have passed without any examination of the merits of plaintiff's claims, whether by a court or an arbitrator, in the United States or in China. Since the start of this litigation, defendant has 1) failed to agree to or initiate any arbitration in China, 2) opposed plaintiff's attempts twice to begin arbitration before the HKAIC, 3) filed a petition seeking to invalidate the very Arbitration Clause relied upon to avoid litigation in this Court, 4) and actively hid the filing of the Yantai petition from plaintiff and this Court in an effort to keep the stay in this case in place. Thus, since the Court's June 2007 Order, defendant has not only failed to seek arbitration of these claims in China, it has sought a legal determination by a Chinese court that the same Arbitration Clause that it relied upon to stay these proceedings in the United States is invalid and unenforceable under Chinese law, thereby attempting to evade the arbitration in China that was compelled by this Court. Moreover, defendant filed its petition in China following this Court's June 20, 2007 Order, which relied on defendant's position that the Arbitration Clause was enforceable and valid in China, as well as this Court's September 22, 2008 Order denying plaintiff's first motion to vacate, during which defendant never made known to the Court its pending petition in Yantai court. At no time during which plaintiff's first motion to vacate was pending before this Court from February to September 2008 did defendant inform plaintiff or the Court of its Yantai petition seeking the invalidation of the Arbitration Clause, whether in its submissions to the Court or during oral argument. In that respect, while this Court "ascribe[s] absolutely no improper motive to [defendant's] United States counsel," it is of the view that "counsel's representation on the record, particularly in view of the context in which they were made, were both inconsistent with [defendant's] ultimate position on this issue, as well as misleading both to opposing counsel and the Court." *Touton v. M.V. Rizcun Trader*, 15 F. Supp. 2d 669, 671 (E.D. Pa. 1998).

Consequently, the Court concludes that defendant's actions since June 2007 clearly indicate that defendant has no intent to actually arbitrate these claims in China, and the past twenty-two months during which the action has been stayed is an illustration of defendant's intentional pattern of gamesmanship and delay. *See Sucrest Corp.*, 236 F. Supp. at 230 ("Dilatory conduct or delay . . . constitutes a waiver where such conduct is inconsistent with an intention to rely upon arbitration. The respondent's failure to make any attempt to arbitrate . . . can only be construed as conduct inconsistent with an intention to arbitrate. It was 'an intentional relinquishment or abandonment of a known right.'") (citations omitted). Moreover, defendant here has specifically and expressly renounced its reliance on the Arbitration Clause. Thus, because defendant has intentionally acted in a manner utterly inconsistent with preserving its right to arbitrate and has, by the totality of its conduct, prejudiced plaintiff's right to have its claim heard on the merits, the Court concludes that defendant has waived its right to arbitrate this proceeding in China pursuant to the Arbitration Clause between the parties. *See Touton*, 15 F. Supp. 2d at 672 (holding that where defendant let critical time elapse before seeking arbitration while simultaneously

advising the court and its opponents that no time bar was at issue, defendant had waived its right to arbitrate.).

Furthermore, defendant's last minute effort, as expressed through its counsel, to agree to arbitration before the HKAIC is insufficient to resurrect the right to arbitration that it has waived. The Court finds it implausible that defendant's Yantai petition or its failure to inform the Court of such is the result of a "misunderstanding." (*See* Affirmation of Kimberly Summers, Esq. ¶ 4 ("[I]t is my belief that Chinese counsel did not understand the implications of seeking a declaration based on the argument that the arbitration provision is invalid and unenforceable.").) Defendant's conduct is simply inexcusable, and the Court has no confidence, given defendant's record of conduct in this litigation, that it will not attempt to further delay the case. Moreover, because plaintiff's position since the start of this litigation has been that the Arbitration Clause is invalid, the Court would essentially be rewarding the defendant for its tactics if it granted its requested fallback position of consenting to arbitration before the HKAIC. Under these circumstances, the Court declines to grant defendant the benefit of its malfeasance.

In reaching this decision, the Court recognizes the strong federal policy favoring arbitration. "'The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability.'" *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth Corp.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25). Further, this strong federal policy applies with equal force to international disputes. *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 (1974) ("The goal of the Convention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."). The Second Circuit has made clear, however, that "[w]hereas there is a strong federal policy favoring arbitration, the right to arbitrate may be waived." *Demsey & Assoc., Inc. v. S.S. Sea Star*, 461 F.2d 1009, 1017 (2d Cir. 1972) (citing *Cornell & Co., Inc.*, 360 F.2d 512) (other citation omitted). Moreover, "[w]hile waiver of arbitration is not to be lightly inferred, the issue is fact-specific and there are no bright-line rules." *S&R Co. of Kingston v. Latona Trucking, Inc.*, 159 F.3d 80, 83 (2d Cir. 1998).

Finally, a vacatur of the stay under these circumstances is consistent with the principle, discussed *supra* in connection with the court's authority to decide the waiver issue, that "a court's ability to reach the question of waiver as a defense to arbitration [is grounded in part on] its ability to control litigation practices before it." *Doctor's Assocs.*, 66 F.3d at 456 n.12 (collecting cases and stating that, "[o]ur decisions to rule on the waiver issue, rather than to refer the question to the arbitrators, could have been explained as exercises of the federal courts' inherent power to deal with abusive litigation practices in their courtrooms."); *see also Marie*, 402 F.3d at 13 ("Where the alleged waiver arises out of conduct within the very same litigation in which the party attempts to compel arbitration

or stay proceedings, then the district court has power to control the course of proceedings before it and to correct abuses of those proceedings."); *cf. Reid Burton Const. Inc. v. Carpenters Dist. Council of Southern Colorado*, 535 F.2d 598, 604 (10th Cir. 1976) ("It is entirely appropriate in some instances for a district court to retain . . . jurisdiction of an arbitrable dispute where, because of conduct before the court, it may be deemed that a party is prevented on the basis of some equitable principle from asserting a right to arbitration . . . . If . . . it is determined that the unions have waived their right to arbitration, or in some other way should be prevented from asserting this right, because of conduct which falls within the control of the court, then the district court can properly proceed to the merits of the underlying dispute."). Moreover, the fact that the Yantai petition was filed in a court in China and not before this Court is of no import, where its impact is to undermine the Court's prior order granting defendant's motion to compel arbitration in China and the legitimacy of the stay granted in this case. *See Marie*, 402 F.3d at 14 ("The waiver here is somewhat unusual in that the claim is of litigation activity before the EEOC that is inconsistent with a right to arbitrate, as opposed to activity before a court. But this makes no difference. Courts are still well suited to determine the sort of forum-shopping and procedural issues that are likely to arise in litigation before the EEOC, and sending the waiver issue to the arbitrator would still be inefficient. The proper presumption in this case is that the waiver issue is for the court and not the arbitrator."). Because of the egregious nature of defendant's conduct, coupled with its newly discovered legal position that is plainly inconsistent with any intent to preserve its right to arbitrate, the Court concludes that, after carefully considering the record and the policies weighing in favor of arbitration, a finding of waiver by defendant of its right to arbitrate this proceeding in China is justified in this case. *Cf. Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Intern. Capital Markets*, 996 F.2d 1478, 1480 (2d Cir. 1993) ("[T]his is one of those 'rare cases' where the strong policy favoring arbitration has been outweighed."). Accordingly, because defendant is now deemed to be in "default in proceeding with such arbitration," 9 U.S.C. § 3, the stay in this case is vacated. Furthermore, due to such waiver, the Arbitration Clause is "null and void" within the meaning of Article II of the Convention.

### III. CONCLUSION

For the reasons stated in this Memorandum and Order and on the record during the April 24, 2009 conference, plaintiff's motion to vacate the June 20, 2007 Order (compelling arbitration and staying this action) is granted. Accordingly, it is hereby ordered that defendant respond to the complaint by May 27, 2009, and the parties proceed with discovery under the direction of Magistrate Judge William D. Wall.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: April 27, 2009
Central Islip, New York

\* \* \*

The attorneys for plaintiff are Jay R. Fialkoff, Esq., Robert D. Lillienstein, Esq., and Jennifer Nigro, Esq., Moses & Singer LLP, 405 Lexington Avenue, New York, New York 10174. The

9

attorney for defendant is Kimberly Summers, Esq., The Blanche Law Firm, P.C., 350 5th Avenue, 68th Floor, New York, New York 10118.